1
2
3
4
5

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913

6
7
8
9

Mason Barney (Pro Hac Vice To Be Filed)
mbarney@sirillp.com
**SIRI & GLIMSTAD LLP**
200 Park Avenue, 17th Floor
New York, NY 10166
Telephone: (212) 532-1091

10

*Attorneys for Plaintiffs and the Proposed Classes*

11

UNITED STATES DISTRICT COURT

12

FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

SOUTHERN DIVISION

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| STACIE KNIGHT, JOHN KNIGHT, ASHLEY JARMAN, JVANNE RHODES, PAULETTE CARR, and ANGELICA MCKENZIE, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KIA AMERICA, INC. <br><br> Defendant. | Case No.: <br><br> CLASS ACTION COMPLAINT FOR: <br> (1) BREACH OF EXPRESS WARRANTY; <br> (2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; <br> (3) VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750 *ET SEQ.* <br> (4) UNFAIR BUSINESS PRACTICES IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*; <br> (5) VIOLATION OF INDIANA'S DECEPTIVE CONSUMER SALES ACT, IND. CODE § 24-5-0.5-1 *ET SEQ.*; <br> (6) VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES, TEX. BUS. & COM. CODE §§ 17.41 *ET SEQ.*; AND <br> (7) UNJUST ENRICHMENT <br><br> **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiffs Stacey Knight, John Knight, Ashley Jarman, Jvanne Rhodes, Paulette Carr, and Angelika McKenzie (each a "Plaintiff" and collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following based upon information and belief, the investigation of counsel, and personal knowledge as to the factual allegations pertaining to themselves.

## INTRODUCTION

1.      This action is brought by Plaintiffs, on behalf of themselves and a class of similarly situated current owners of model year 2017 through the present automobiles manufactured in the United States (the "Class Vehicles"), all of which were delivered by Kia America, Inc. ("Kia") with an identical and inherent defect in the vehicle's paint. The defect in the paint, which was present upon delivery, manifests itself over time, causes the paint to bubble, peel and flake off the vehicle, and leads to rusting and corrosion (hereinafter, "Defect").  When customers seek repairs under the paint warranty, Kia's denies the warranty claims and blames the customer.  Plaintiffs seek damages on behalf of themselves and the classes they seek to represent.

2.      Manufacturers paint automobiles for two primary purposes: to protect the body of the vehicle and for decoration.  As detailed below, due to the Defect, the Class Vehicles are prone to and do experience paint peeling, bubbling, and flaking at rates and in a manner that do not conform to industry standards.  Faced with peeling paint, the owners of these vehicles must either live with the problems caused by the Defect or spend significant money to have the vehicles repaired and repainted.  This Defect substantially decreases the value of these Kia automobiles and subjects the body to rust and decay.

3.      Plaintiffs are informed and believe that, as described more fully below, Kia has known about this problem with its paint at all relevant times yet has repeatedly failed to disclose the Defect to the public, including Plaintiffs and the members of the proposed classes.  Kia has refused, and continues to refuse, to provide a remedy to vehicle owners under the warranty.

-2-

CLASS ACTION COMPLAINT

4.    Despite Kia's knowledge of the Defect, Kia personnel continue to deny that the Defect, and instead insist that the peeling paint is simply "normal wear and tear," to delay customers from submitting warranty claims and, when they do submit warranty claims, Kia denies them.  After the vehicle's three-year/36,000-mile written paint warranty expires, Kia disclaims any and all liability for the Defect, leaving the consumer to bear the cost of an expensive repair or accept the unsightliness of the peeling paint and risk rusting and corrosion of the vehicle's frame.

5.    Plaintiffs seeks actual and/or compensatory damages, and injunctive relief.

## THE PARTIES

### A.    Plaintiffs

6.    All Plaintiffs are purchasers of the Class Vehicles and have been damaged. Plaintiffs have experienced paint peeling, bubbling, or flaking on their Kia automobiles that occurred during the warranty period, have notified the dealer or Kia directly, but have had their warranty claims denied and have had to pay for repairs themselves, or were unable to afford repairs such that the paint continues to peel, bubble and flake off.

7.    Plaintiffs Stacey and John Knight are adult individuals residing in Newburgh, Indiana, who are citizens of Indiana.

8.    Plaintiff Ashley Jarman is an adult individual residing in Zavalla, Texas, who is a citizen of Texas.

9.    Plaintiff Jvanne Rhodes is an adult individual residing in Dallas, Texas, who is a citizen of Texas.

10.    Plaintiff Paulette Carr is an adult individual residing in Lancaster, California, who is a citizen of California.

11.    Plaintiff Angelika McKenzie is an adult individual residing in Menomonee Falls, Wisconsin, who is a citizen of Wisconsin.

### B.    Defendant Kia America, Inc.

12.    Defendant Kia America, Inc., f/k/a Kia Motors America, Inc. ("Kia") is an automobile design, manufacturing, distribution, and/or service corporation doing business

CLASS ACTION COMPLAINT

within the United States. Furthermore, Defendant Kia designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles, including the Kia Class Vehicles.

13.    Defendant Kia is incorporated and headquartered in the state of California with its principal place of business at 111 Peters Canyon Road, Irvine, California 92606. Kia is the U.S. sales and marketing division of its parent company, Kia Motors Corporation of Seoul, South Korea, which oversees sales and other operations across the United States. Kia distributes Kia vehicles and sells these vehicles through its network of more than 755 dealerships. Money received from the purchase or lease of a Kia vehicle from a dealership flows from the dealer to Kia.

14.    Kia is the American sales, marketing, and distribution arm of Kia Motors Corporation. Kia offers a complete line of vehicles through more than 755 dealers throughout the United States. Upon information and belief, the distribution, service, repair, installation, and decisions regarding the Class Vehicles as it relates to the paint defect were all performed by and/or at the direction of Defendant Kia.

15.    Kia engages in continuous and substantial business in California.

16.    Whenever reference in this Complaint is made to any act of Defendant Kia, or other corporate Defendant as may be named in the future, the allegation shall be deemed to mean that the officers, directors, agents, representatives, subsidiaries, affiliates and employees of the Defendant Kia performed or authorized the act while actively engaged in the management, direction, or control of the affairs of the corporate Defendants, and while acting within the course and scope of their employment.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs. There are more than 100 putative class members as defined below, and numerous members of the proposed class who are citizens of a state different from Defendants.

-4-

CLASS ACTION COMPLAINT

18.    This Court has personal jurisdiction over Defendant Kia America, Inc., because it is incorporated under the laws of this state, has its headquarters in California, conducts substantial business in the District, and committed the acts and omissions complained of in California. The unlawful and deceptive practices alleged here were conceived, reviewed, approved and otherwise controlled from Defendants' headquarters in California.  Further, the misrepresentations and omissions alleged here were contained on Defendants' website and media sites, which, Plaintiffs are informed and believe, are maintained in California, as well as throughout every state in the United States. Customer service and technical service for the website are located in California as well.

19.    Venue as to Defendant is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District, and Plaintiff Paulette Carr resides in this district.

## GENERAL ALLEGATIONS

20.    Kia claims that it is the "#1 Brand in Vehicle Dependability Study" and that "[w]e believe in the outstanding quality and durability of every new Kia that rolls off the assembly line."[1]

21.    The Kia brand heavily promotes the look of the cars.  For example, the Kia Sorento is advertised as maximizing the "voluptuous body shape, highlighting its strong urban looks" and all of the Kia colors "beautifully harmonize with the exterior, reflecting so many different lifestyles."[2] Complementing these looks, Kia generally offers between four and six different colors for each of its models, with names such as "Everlasting Silver," "Glacial White Pearl" or "Steel Gray" that evoke thoughts of strength and durability.  However, Nowhere in Kia's advertisements does it mention that the paint is defective and prone to bubbling, chipping, fading, cracking, flaking, and discoloration.

22.    Plaintiffs are informed and believe that there are approximately three types

---

[1] https://www.kia.com/us/en/why-kia (last visited June 13, 2022).
[2] https://news.hyundaimotorgroup.com/Article/All-About-Kia-Sorento-Its-Colors-and-Designs (last visited June 13, 2022).

-5-

CLASS ACTION COMPLAINT

of additive pigments used in most pearl paints for cars, including the Xirallic, Mica, and Glass.[3]  Kia uses Xirallic in its blue and pearl white paint.[4]

23.    Plaintiffs are informed and believe that the additive pigments are a very particular metal that is very fine consistency which changes the bonding composition of the paint, if not done correctly.  The paint adheres differently depending on the paint and the material of the body panel (i.e., fiberglass, aluminum, steel). Also, the body contour of the panel can cause adhesion issues.[5]

24.    Kia does not disclose that it has received scores of complaints of paint peeling from Kia owners across the nation, despite Kia's goal to deliver "zero-defect vehicles to customers" by "operating a mobile-based monitoring system called Global port/dealer PDI Management System (GPMS)" and through "MyService, which digitizes the entire service process from entry reservations to vehicle inspection, quotation and delivery.[6]

25.    Kia widely promotes the fact that its Class Vehicles are accompanied by its 10-year/100,000-mile warranty program, which Kia claims is "industry-leading" and "is a testament to [Kia's] commitment to quality."[7]

26.    Many car manufacturers include paint defects among the defects covered by their standard new car warranty.[8]  However, Kia's vaunted 10-year/100,00-mile warranty does not cover paint.  Instead, it offers only a 3-year/36,000-mile paint warranty ("Paint

---

[3] https://mygaragestory.net/pearl-paint-definitely-need-know/ (last visited June 13, 2022).
[4] https://news.hyundaimotorgroup.com/Article/All-About-Kia-Sorento-Its-Colors-and-Designs (last visited June 13, 2022).
[5] https://www.wsj.com/articles/SB10001424052748703696704576222990521120106 (last visited June 13, 2022).
[6] https://worldwide.kia.com/int/files/company/sr/sustainability-report/sustainability-report-2021-final.pdf (2021 Annual Report, pg. 30) (last visited June 13, 2022)
[7] https://www.kia.com/us/en/warranty (last visited June 13, 2022).
[8] *E.g.*, https://www.ford.com/support/how-tos/warranty/warranties-and-coverage/what-is-the-warranty-on-paint/, https://www.goderichtoyota.com/what-is-covered-by-toyota-new-vehicle-warranty/ (last visited June 13, 2022).

-6-

CLASS ACTION COMPLAINT

Warranty") which it buries in its vehicle brochures, advertisements, and owner's manual.

- **Paint**

  Paint repairs due to non-impact discoloration, fading, cracking, chipping, or flaking are covered for the first 36 Months/36,000 miles.

27.    Even though Kia's Paint Warranty expressly covers repair due to "non-impact discoloration, fading, cracking, chipping, or flaking," Kia consistently denies class members' coverage of Class Vehicles under the Paint Warranty as reported by consumer complaints.

28.    Any defect in the paint of Class Vehicles is a latent defect that could not and would not be expected to be discoverable by a reasonable purchaser upon inspection prior to the sale.  Moreover, Kia had exclusive knowledge about the Defect as described more fully below. Thus, Kia had a duty to disclose the existence of this latent defect to Plaintiffs and members of the class but failed to do so.

29.    Reasonable consumers would develop an expectation or assumption regarding the quality and longevity of the paint used on Class Vehicles based upon Kia's widespread and public advertisements, statements and representations regarding the company's commitment to quality and dependability.  A reasonable consumer would expect the paint on a new car to last at least as long as the general warranty, and would not expect the paint to bubble, flake, chip and/or peel within the first three years.

30.    Contrary to these expectations, Kia has known of the defect in the paint through, *inter alia*, complaints lodged by consumers across the country. Indeed, numerous websites feature complaints about the paint problems experienced with Class Vehicles.

31.    The following are examples of consumer complaints regarding peeling paint found on the Kia-Forums.com website[9]:

---

[9] Sic throughout (available at https://www.kia-forums.com/threads/poor-paint-quality.347512/ (last visited June 13, 2022)).

-7-

CLASS ACTION COMPLAINT

(a) asubram3, 2019 Kia Sorento SX (Sept. 3, 2020): "The paint on my Sorento
seems to develop scratches upon merely touching with any hard material,
say like plastic. My other vehicle is a 14-year old Mercury Milan that still
has good quality paint, with very few scratches. The Sorento developed a
few scratches despite me taking care to park well away from other vehicles.
The other day my bicycle handle merely brushed the front panel, and that
led to another scratch. Has anyone else experienced poor or easily
scratched paint quality on their Sorento?"

(b) Superfat_dad, 2019 Kia Sorento LX (Sept. 3, 2020): "Mine will develop
scratches if you look at it a bit too long. I can agree that the paint is too
softer and easier to scratch than any other car I own or owned."

(c) DinaVF, 2018 Kia Sorento (Sept. 9, 2020): "My 2018 Sorento is losing
paint on the hood. Round pecks. The paint is not quality. Door dings really
damage paint!! Had a 2016 Sorento. Looked at paint, scratch like mark's
everywhere. When I bought it, there was another 16 on the lot. Look liked
it had been driven thru briars!!! It was terrible. I didnt realize that it was
the paint!! Thought was not taken good care of. Live and learn."

(d) SorNtoe16, 2016 Sorento SX 3.3 (Sept. 9, 2020): "I agree the paint seems
less durable than other cars I've owned; I too have noticed scratches in the
door handle pockets. I was about to make a new post about my paint issue,
but maybe I'll float it here first: I've had my 2016 Sorento for 5 years now,
and about 3.5 years into ownership the paint on the driver's side of the
plastic spoiler, or shade, over the rear window began to crumble off. I took
it to the dealer a year ago, assuming it would be no-brainer warranty repair,
but all I got was a "nope" in response. Anyone else had the same or a
similar problem? Is it indeed just up to me to mitigate the problem?"

-8-

CLASS ACTION COMPLAINT

(e) tom4416, Sorento LX V6 2018 (Sept. 12, 2020): "Should be but be prepared to deal with 'caused by environmental issues'. They will blame UV damage, acid rain, volcano eruptions in some other part of the world before they bend over to agree it's a material/application issue. Good luck."

(f) timaishu, 2017 Sorento LX (May 18, 2021): "A few years.. hah. Clear coat is bubbled up on the rear wing and the paint/clear has begun checking on the hood. Clear is also failing on one headlight. Pisses me off. My wife's 2013 Jetta has perfect paint still."



32.    The following are examples of consumer complaints regarding peeling paint found on the complaintsboard.com website[10]:

---

[10] Sic throughout (available at https://www.complaintsboard.com/kia-motors-bad-paint-c644680 (last visited June 13, 2022)).

CLASS ACTION COMPLAINT

(a) Jamie Rogers (Dec. 2, 2020): "I own a 2013 Kia Optima with the snow-white pearl paint and it is definitely peeling at a rapid rate. It is peeling off on the sides of my trunk, near the windshield, on the hood, and also on the edges of the doors. I bought it used, but have only owned it for 3 years and the paint was in PERFECT condition when I bought it. I have never done anything to make the paint chip or peel. It looks horrible!! KIA needs to FIX THIS IMMEDIATELY. We pay a lot of money for new cars and should expect that they hold up. My parents own cars that are 20+ years old and their paint is still in good shape! KIA NEEDS TO STEP UP AND REMEDY THIS!!"

(b) Doug Worley (Nov. 11, 2020): "My 2013 Kia Optima has the same peeling problem as many of you have described . My hood has 17 spots some the size of a 1 inch in diameter, it is missing much of the paint on the rails on both sides of the windshield and starting to blister in other areas. the service manager at my dealership will not even return my calls knowing the nature of my complaint. We have loved our Kia and had planned on buying a second one soon. that will never happen unless I can get some satisfaction."

(c) joe rb (July 16, 2020): "I bought a new 2014 Kia Sorreto in pearl white, . The car has 25, 000 miles, While washing the car I noticed above the windshield that where were two spots where the paint has come off. Then I noticed on the rear quarter panel near the top two more spots and again along the bottom edge of the rear window the paint had come off. In addition, on the cross bar on the factory installed roof rack the paint just peeled off leaving the bare metal. It like the paint did not stick to the metal."

-10-

CLASS ACTION COMPLAINT

(d) 33ericl (Sept. 21, 2019): "I have a 2016 kia rio 5 silver. its funny cause NO auto store has touchup paint for these cars because they are always SOLD OU. the paints is horrible thin and weak. I took my taillights off to change a bulb and I was ever so carefull and paint literally peeled off the edge. so mad!! there are other spots that easily pitted or chipped. I wont even bother dealing with kia warranty. they honor nothing"

(e) Tony & Marla (July 30, 2019): "We have a 2014 Kia Optima SX. Within a few months I found a few paint chips on the hood. Chalked it up to a truck on the road ahead of us, or whatever. There are now chips of paint missing all over the car, and it scratches so easily."



(f) Kit Schiller (Mar. 30, 2019): "I have a 2014 Kia Sorento, Pearl White and paint is peeling off in large chunks. Past the 3 year warranty and so Kia is refusing to help. I'm not done. I think we all need to contact Consumer affairs, Better Business Bureau and Attorney General. I plan to do all three and fight this, even if I need to call Morgan & Morgan."

-11-

CLASS ACTION COMPLAINT



(g) DebraWare (July 26, 2021): "@Kit Schiller I have a 2015 Pearl White Kia Sorento with the same problems. When it started it quickly peeled. Now, I am starting to get rust spots. I contacted the dealership and they said it was my problem. I have contacted Kia with no response."

(h) stephen shawcross (Sept. 17, 2018): "I purchased a Kia Sportage March 2017, cleaned it every month using high quality shampoo. Whilst I was cleaning the roof panel, I found a small area where the paintwork had been affected. I contacted the dealer where they in turn contacted the warranty department. They replied to the dealer who in turn replied to myself that it was a bird dropping that had caused this problem and they would not be interested in this problem. This vehicle is kept on a driveway not under trees, not on the road where it could receive any damage and has been well looked after. There is only 6, 000 miles on the clock which shows I do not travel in it too often. I agree with all the above comments that the paintwork is inferior and if this is so then I would not recommend a Kia whatever model . I would also wish to be made aware that I had 10 in number wheel nuts go rusty within 6 months of purchasing this vehicle. I was informed this too was not under warranty but my dealership

CLASS ACTION COMPLAINT

exchanged these wheel nuts but Kia did not want to know. All in all I do not think Kia warranty exists as they appear to have an excuse to discharge themselves."

(i) Deloris68 (Oct. 14, 2019): "@Dispatch65 I have a 2015 Sorento with the same issue, at less than 28, 000 miles around the driver side door by the windshield started peeling off and on top of the windshield, steady getting worse. I hate to even wash my car it takes off more paint."

(j) KRohl (Jan. 9, 2018): "I own a 2015 KIA Forte Koupe with the electric blue paint. 2 weeks ago not a thing wrong with it. I went through a "touchless" car wash this morning and as I was walking into work this morning noticed about 30 circular paint chips all over the hood of the car. My car sits in a garage and is not over exposed to elements. It appears to be ONLY on the hood of the car, not the roof, trunk, etc. So I believe this to be an issue with either the paint they use or the application of it. Do I have any recourse back to the manufacturer on this?"

(k) Kay McGrew (May 15, 2018): "@KRohl I just took a 2017 Sedona to the dealers body shop this morning with paint off the hood same as yours some circular shapes and some look like drag marks over an inch long. The vehicle has 2700 miles...that's two thousand seven hundred. The estimator ask me if I parked under a tree. I don't. But if I did so what? Paint should be able to stand up to almost anything except maybe hail...and I seen hail damage that hasn't broke paint. I had a 2003 same Sedona it did the same thing wouldn't you think in 14 years they would be able to get paint right? That one by the way, was painted so many different times it looks like a calico cat ( it was Sapphire Blue) This one is black."

-13-

(l) IORTOO (Apr. 28, 2018): "I have a pearl white 2013 Optima, today I notice a 1x3 inch of paint missing from inside passenger windshield post, just wondering if this is a problem for others. Sad thing is I only have 28k miles."

33.    The following are examples of consumer complaints regarding peeling paint found on the carproblemzoo.com website[11]:

(a) 2016 Kia Motor Optima (Failure Date: 01/24/2021): "I bought my 2016 pearl white kia Optima in may of 2016. Recently, I noticed the paint chipping and peeling off my hood. It started out the size of a pea but now is bigger than a quarter and continues to get bigger by the day. I now have another spot that is chipping on the hood due from heavy rain this past week. The paint is also peeling or chipping on the roof right above where the front windshield meets. I expect nicks and chips from debris when hit while driving or parked, but not paint peeling off and chipping while it sits in my driveway with no threat of damage."

(b) 2013 Kia Motor Optima (Failure Date: 11/05/2018): "Before I paid off my car in 12-1-18, my 2013�kia Optima's paint started chipping off. It has chipped off first on the hood and then on the door jams on both front doors. I find this suspicious in that when I bought the car new, they were pushing an extra paint protection program- - for a mear $2000 plus extra! it's as if they knew the paint would fail in less than five years."

(c) 2013 Kia Motor Optima (Failure Date: 06/12/2017): "The paint pilling off the car took it to kia they told me they can't do nothing the pain pills so

---

[11] Sic throughout (available at https://www.carproblemzoo.com/kiamotor/optima/paint-problems.php (last visited June 13, 2022)).

-14-

bad this a five year car in it look like 15 year old car cost me 2800 to get the car painted I know that this was a defect on the pait in kia don't want to admit it I think this is something that it needs to be checked kia need to fix this problem."

(d) 2013 Kia Motor Optima (Failure Date: 05/01/2017): "The paint on my 2013 Optima has bubbles in it that are cracking open with paint peeling away. There is one section on the passenger side front door with one patch that is at least 3" long and 2" wide where the paint flacked off. The paint around the windshield has also flaked off in places that are now causing rust spots. There has been nothing to cause the issue with the paint. The car has the original pearl white paint. This started with minor spots and has gradually increased to more places on the car with paint missing. This has been an on-going issue the entire time I have owned the car."

34.    Automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety-related. 46 U.S.C. §§ 30166, 30167. Thus, Kia knew or should have known of the many complaints about the Defect logged by NHTSA's Office of Defects Investigation. The content, consistency, and disproportionate number of those complaints alerted, or should have alerted, Kia to the Defect.

35.    Many consumer complaints made to NHTSA, a sample of which is listed below, also state that the dealership was made aware of the problems caused by the Defect:

**2016 Kia Sorento**[12]

(a)    NHTSA ID Number: 11425728

July 20, 2021

---

[12] Sic throughout (available at https://www.nhtsa.gov/vehicle/2016/KIA/SORENTO/SUV/FWD (last visited June 13, 2022)).

CLASS ACTION COMPLAINT

Incident Date June 7, 2021

Consumer Location BENTONVILLE, AR

Vehicle Identification Number 5xypg4a31gg****

Paint is rapidly peeling

(b)    NHTSA ID Number: 11425094

July 16, 2021

Incident Date March 17, 2021

Consumer Location ORLANDO, FL

Vehicle Identification Number 5xypg4a35gg****

My 2016 Kia Sorento is pearl white and the paint is chipping. All over the engine hood and roof of my car. Paint bubbles, cracks and peels off. It's getting worse rapidly.

(c)    NHTSA ID Number: 11424650

July 13, 2021

Incident Date July 13, 2021

Consumer Location STARKVILLE, MS

Vehicle Identification Number 5XYPK4A55GG****

The Pearl White paint is chipping off the hood. It looks horrible and needs to be fixed ASAP! The sunroof, back latch and BSD have all been "fixed" by Master Mechanics but they are still not working correctly. The sunroof is slow closing and won't close all the way. The back latch won't open most of time without you getting it started. It also makes a horrible noise when it closes. The BSD doesn't work at all.

(d)    NHTSA ID Number: 11351647

August 27, 2020

Incident Date March 1, 2020

-16-

CLASS ACTION COMPLAINT

Consumer Location HERMANVILLE, MS

Vehicle Identification Number 5XYPG4A39GG****

MY 2016 KIA WITH PEARL WHITE PAINT IS PEELING VERY
BADLY ON MY HOOD AND ROOF. THIS IS OBVIOUSLY A
MAJOR PROBLEM OR DEFECT WITH THE PAINT. I THOUGHT
AT FIRST IT WAS A ROCK CHIP BUT IT WAS NOT. IT IS
SPREADING ALL OVER THE HOOD AND ROOF.

**2014 Kia Sorento**[13]

(a)    NHTSA ID Number: 11354782

September 13, 2020 Incident Date May 1, 2020

Consumer Location GREEN BAY, WI

Vehicle Identification Number 5XYKTDA6XEG****

PEAR WHITE PAINT HAS BEEN PROGRESSIVELY BUBBLING
AND PEELING OVER THE LAST FEW MONTHS. AREAS
INCLUDE THE HOOD AND THE ROOF AREA NEAR THE
FRONT WINDSHIELD

(b)    NHTSA ID Number: 11373690

November 8, 2020

Incident Date November 1, 2018

Consumer Location WILMINGTON, NC

Vehicle Identification Number 5XYKU4A70EG****

PAINT HAS BEEN CHIPPING ON MY 2014 KIA SORENTO
WHITE PEARL. I BOUGHT THIS CAR THROUGH AAA AUTO
SALES AND WAS ALREADY CHIPPING. NOW I READ ONLINE

---

[13] Sic throughout (available at
https://www.nhtsa.gov/vehicle/2014/KIA/SORENTO/SUV/FWD (last visited June 13,
2022)).

CLASS ACTION COMPLAINT

THAT IT'S BEEN A BIG PROBLEM. I AM UNSURE OF THE DATE THAT IT STARTED BUT I CERTAINLY DON'T HAVE THE MONEY TO GET MY CAR REPAINTED AND ADVANCED AUTO DOESN'T CARRY THE TOUCH UP PAINT.

(c)    NHTSA ID Number: 11373241

November 5, 2020

Incident Date December 31, 2019

Consumer Location MARIETTA, GA

Vehicle Identification Number 5XYKT3A61EG****

I BEGAN NOTICING PAINT CHIPS IN 2019 ON A 5 YEAR OLD VEHICLE. THESE SPOTS HAVE BECOME LARGER AND LARGER IN VARIOUS LOCATIONS ON THE CAR PRIMARILY THE HOOD, A FRAME, AND ROOF. I HAVE ALSO NOTICED THIS SAME ISSUE WITH OTHER KIA SORENTO'S THAT ARE ALSO PEARL WHITE. THERE SEEMS TO BE A DEFECT IN THE PAINT. I KNOW THAT ALONE MAY NOT BE A HUGE ISSUE BUT WHAT IF IT CONTRIBUTES TO ANOTHER ISSUE? THERE ARE ALREADY SEVERAL SERIOUS RECALLS. IF THERE IS A DEFECT IN THE PAINT, WHAT HAPPENS IF IT GETS TOO HOT OR SOMETHING?

(d)    NHTSA ID Number: 11361519

September 28, 2020

Incident Date September 25, 2020

Consumer Location DECATUR, AL

Vehicle Identification Number 5XYKT3A60EG****

THE PAINT HAS CHIPPED OFF IN A LARGE PORTION OF THE HOOD. IT IS NOT A NORMAL PAINT CHIPPING BUT RATHER

-18-

CLASS ACTION COMPLAINT

A LARGE PIECE/SECTION JUST CAME FLYING OFF DURING DRIVING TIME, APPROXIAMTELY 50 MILES PER HOUR.

36.     Complaints filed by consumers with the NHTSA and other websites, continue to accrue and demonstrate that the Defect is a widespread, and unresolved problem.

37.     Many of the complaints reveal that Kia, through its network of dealers and repair technicians, has been made aware of the Defect. In addition, the complaints indicate that, despite having knowledge of the Defect and even knowing the exact vehicles affected, Kia often refused to diagnose the Defect or otherwise attempt to repair it while the Class Vehicles were still under warranty.

38.     The consumer experiences set forth above are by no means isolated or outlying occurrences.  As shown above, the internet is replete with examples of forums and websites where consumers have complained of the same paint defect in their Kia vehicles.  The examples also show that the consumers complained to their local dealerships and to the corporate offices of Kia.

39.   Plaintiffs are informed and believe that Kia, through (1) customer complaint records, including but not limited to those maintained by the federal government, (2) dealership repair records, (3) warranty and post-warranty claims, (4) internal testing, and (5) various other sources, was well aware of the paint defect but failed to notify consumers, including Plaintiffs and members of the Classes, of the nature and extent of the problems with the paint on Class Vehicles or provide any adequate remedy.

40.     Plaintiffs are informed and believe that Kia's customer relations department routinely monitors the internet for customer complaints, and Kia has retained the services of third-parties to do the same.  Further, the customer relations division regularly receives and responds to customer calls concerning product defects.  Through these sources, Defendant was made aware of the paint defect.  The complaints indicate Kia's knowledge of the defect, directly and indirectly from its authorized dealers.

CLASS ACTION COMPLAINT

41.    Kia was further made aware of the issue in 2016 when it faced a class action lawsuit by fifteen individuals representing ten different states, alleging that the paint on 2006–2016 Hyundai Santa Fe, Sonata, and Elantra vehicles contain an inherent defect which causes the paint to bubble, peel and flake off the vehicle, which can lead to rusting and corrosion. *Resnick v. Hyundai Motor Am., Inc.*, No. 8:16-cv-00593 (March 30, 2016 C.D. Cal.).  Kia knew about the lawsuit because Kia was named as a defendant but was dismissed in the early stages of the litigation.

42.    In addition, Plaintiffs allege on information and belief that, to the extent that Hyundai Motor Company was aware of issues with its paint, either as a result of the *Resnick* litigation or otherwise, that should have also alerted Kia to similar issues due to the numerous connections between the companies and shared resources.  Hyundai is the largest shareholder in Kia and has a seat on its board.  The two companies operate joint research and development centers around the world.  The two companies also use the same platforms, engines and other parts for some of their models.

43.    Plaintiffs are informed and believe that the two companies also share paint resources.  For example, in certain model years, both Hyundai and Kia have used the same color codes for some of their paint colors.  For example, the website Color Code Database (hdpaintcode.com), which maintains information regarding vehicle paints, shows that in 2017 and 2018 Kia's Hyper Red and Hyundai's Fiery Red shared the color code A3R.  In 2016 Kia and Hyundai both offered cars in the color Platinum Graphite Metallic and denoted that color with code ABT.  In 2015 and 2016 Kia's Titanium Silver Metallic, and Hyundai's Titanium Gray Metallic colors both used the IM color code.  In that same year Kia's Remington Red Metallic and Hyundai's Serrano Red Metallic used the color code TR3.

44.    Bigclassaction.com, a website that provides consumers with news updates about class action lawsuits, published an article about the *Resnick* litigation, on April 7, 2016. Subsequently, many consumers posted comments about their own experiences with the Defect and requested information of how to join the class action, with posts as

CLASS ACTION COMPLAINT

recently as September 6, 2021. The following are examples of consumer complaints regarding peeling paint found on the bigclassaction.com website:[14]

(a) <u>Anna Bobcova</u>

December 7, 2016

Bubbling and blistering on my 2012 Rio as well. Dealership hasn't been too helpful, also claiming they've never heard of such a thing, so I am dealing with customer affairs to get something resolved.

(b) <u>J Schrieber</u>

March 15, 2017

"I have a 2016 Kia Sedona and my paint is flaking and chipping off. I have a crack underneath my passenger door that is now flaking and chipping off. I have had several "chips" of paint and I havent even had the van 8 mos."

(c) <u>CH</u>

March 31, 2017

"I have a 2016 Kia Soul with rust spots all over. Kia service said it was 'rail dust' from being hit with debris during transport to dealer. Will not fix."

(d) <u>charlene seay</u>

July 30, 2017

"My 2012 soul has paint issue..The back the paint bubales up and flakes off.My Soul is starting to rust..I bought this vehicle new and still paying

---

[14] Sic throughout (available at https://www.bigclassaction.com/lawsuit/hyundai-defective-automotive-class-action-lawsuit.php (last visited June 13, 2022)).

CLASS ACTION COMPLAINT

on it..this started about 2 years ago and Kia will not fix it..urgg"

(e) <u>Greg S</u>

July 17, 2019

"I have a 2013 KIA Optima SXL Snow white pearl and the paint is peeling everywhere on the car. Huge chunks of paint keep falling off. Took to dealership who told me it was out of warranty and to contact corporate. Contacted Corporate and they told me to send pics and to get a quote and opinion that it was a defect. So sent pics and estimate to rep I was working with who sent them to district manager Joseph Hegmann. He then told the customer service rep to tell me to take the car to a dealership so they can process it. So I took the car to the dealership and they took more pics and submitted to Joseph Hegmann again. Then they wanted the same estimate that was already sent. I did everything they requested but have received radio silence for several months now. I tried calling corporate again but they just tell me they will contact me when there is an update. I have also reached out to the dealership asking if they could follow up for me but they pretty much ignore me. Get this I have bought 3 KIA's and have them all serviced by KIA dealerships but this means nothing to them so I guess they have lost a lot of business."

(f) <u>Nancy Morrison</u>

December 9, 2019

"I have a 2015 Kia Rio and the clear coat is bubbling up on my car, also there is what appears to be a film on the windows that is cracking and wrinkling up."

-22-

CLASS ACTION COMPLAINT

(g) Bonnie Garbarini

September 6, 2021

"I purchased a 2021 black Kia Sorrento on January 21st, 2021. I barely have 5000 miles on the car. Already the clear coat is bubbling and peeling on the front end and love bug season hasn't even started. The service manager told me to hand wash the car so that is what I am doing and I still have a paint issue. I have never had a car that I couldn't use the car wash with. White marks show on the car like lines from the car wash brushes. What kind of paint and paint job is that. I think that their quality control was out sick with Covid when my car was manufactured. I will confront the manager tomorrow about this. I paid $4500 on top of the $45,000 price of the car for an appearance package and the paint is supposed to be guaranteed for 7 years, I have had the car 8 months!!!"

## PLAINTIFFS' FACTS

**A.    Stacey and John Knight**

45.    Plaintiffs Stacey and John Knight own a 2019 Kia Sorento in Pearl White, which they purchased new in or around July 2019 from the Kia dealership at Evansville, Indiana.

46.    To his surprise, in approximately January 2020, and even before the car had reached 25,000 miles, he observed that the paint on the hood of the car had started to peel.

47.    In January 2020, Mr. Knight took the car to the dealership to request a resolution, but the dealership dismissed his concerns and told him that his car's paint issues stem from rock damage.

48.    Dissatisfied with the dealership's response, in February 2021, Mr. Knight took his car to two separate body shops in Newburgh Indiana, for evaluation.  Each shop independently concluded that the paint chipping is not rock damage, but a paint defect.

-23-

Each body shop also provided him with an estimate of the repair costs, which ranged between $675 and $1500.

49.    Thereafter, Mr. Knight reached out to Kia for a better resolution of the issue. His calls were returned six weeks later, and he was notified that Kia would rely on the Evansville dealership's conclusion that the damage on his car is due to rocks, and Kia refused to take any action to repair the damage or reimburse Mr. Knight for the cost of repairs.

50.    Had Plaintiffs Stacy and John Knight known of the Defect, they would not have purchased the car, or would have paid less for it.

**B.    Ashley Jarman**

51.    Plaintiff Jarman owns a 2020 Kia® Sorento in Pearl White, which she purchased new in or around April 2019, from Premier Kia dealership in Lufkin, Texas.

52.    In or around August 2020, and when the car had approximately 34,000 miles on it, Plaintiff Jarman noticed that the paint on her car had started to peel.  Below are photographs Plaintiff Jarman took, documenting the paint defect on her car:



53.    Her car was still under warranty, so she brought it to the dealership.

54.    The dealership gave her an unsatisfactory response as to the causes of the

CLASS ACTION COMPLAINT

damage to the paint on her car.  She was told that the paint on her car was peeling because of bugs and because her car was dirty.  She was also told to contact Kia directly.

55.    Thereafter, Plaintiff Jarman submitted a formal complaint to Kia.  After receiving no response to this complaint, she then attempted to contact the company several times, but has still not received any response thus far.

56.    Plaintiff Jarman would take her car through a carwash regularly before the paint on her car started to peel.  Now, she takes it to a carwash only once a month because of the paint defect.

57.    Further, Plaintiff Jarman has never been in an accident or had any other damages to the car that would have caused the paint to peel on her car.

58.    Had Plaintiff Jarman known of the Defect, she would not have purchased the car, or would have paid less for it.

**Jvanne Rhodes**

59.    Plaintiff Rhodes owns a 2019 Kia Sorento in White, which she purchased used from Hertz Rent-A-Car, in or around June 2020, when the car had approximately 10,000 miles on it.

60.    When she first bought the car, she inspected the vehicle and observed no problems with the paint.

61.    However, before the car had run 36,000 miles, in or around August 2020, she noticed that the exterior paint had started to peel at many spots, including the front bumper, grille, doors, and the inside surfaces of the car.  This peeling has caused her less than 2-year-old car to rust in several places, including on the interior of the door.  Below

CLASS ACTION COMPLAINT

are photographs Plaintiff Rhodes took to document the paint defect on her car:



62.     Plaintiff Rhodes took her car to the dealership for an assessment on or about August 7, 2020.  Her claim that the paint was improperly peeling was met with a non-committal response: "that's weird."  The dealership simply offered her a complimentary car wash, but never offered to fix the pealing or rust.

63.     Shortly thereafter, she took her car to the dealership a second time.  She again pointed out the chipping paint.  This time, the dealership told her she that she would have to pay a diagnostic fee to re-assess the vehicle for damage.  Plaintiff Rhodes was dissatisfied with the dealership's proposal and refused the offer.

64.     Plaintiff Rhodes strictly handwashes her car rather than taking it to a carwash.

65.     Plaintiff Rhodes's car has never been in an accident or had any other damages to the car that would explain the paint chipping and rust formations on her car.

66.     Had Plaintiff Rhodes known of the Defect, she would not have purchased the car, or would have paid less for it.

-26-

CLASS ACTION COMPLAINT

### C.    Paulette Carr

67.    Plaintiff Carr owns a 2017 Kia Niro ex hybrid in Red.  She purchased her car new from the Kia dealership at Palmdale, California in or around September 2017.

68.    Sometime in the summer of 2019, when her car had around 24,000 miles, Plaintiff Carr noticed that the paint on her car began to chip at many spots, including on the edge of the hatchback roof, the door handles, and the bumpers.

69.    In the summer of 2019, Plaintiff Carr took her car to the dealership to seek a resolution of the paint chipping issue.  Plaintiff Carr is disabled and requires a cane to walk, thus going to the dealership was not as easy for her as it would be for an abled bodied person.

70.    The dealership refused to fix the problem.  Instead, despite her disability, it simply offered Plaintiff Carr a touch-up paint pen to cover the affected spots and nothing else. Plaintiff Carr refused to use the touch-up paint pen because it significantly worsens the appearance of the affected spots.

71.    Plaintiff Carr only enlists her son's aid to handwash her car with a soft rag and regular car soap. She has never taken her car through a carwash.

72.    Plaintiff Carr's car has never been in an accident or had any other damages to the car that would have caused the paint to chip on her car.

73.    Had Plaintiff Carr known of the Defect, she would not have purchased the car, or would have paid less for it.

### D.    Angelika McKenzie

74.    Plaintiff McKenzie owns a 2020 Kia Telluride in Glacier Pearl White, which she purchased new in or around February 2020 from the Lupient Kia Dealership in Milwaukee, Wisconsin.

75.    In May 2021, Plaintiff McKenzie noticed that the paint on her car started bubbling at the front right side, the passenger back door, and the grille of the car.  At that point, her car had only approximately 15,000 miles on it.

76.    She immediately notified the dealership that sold her the car about the

CLASS ACTION COMPLAINT

problem.  The dealership advised her to leave her car with them to be sent to its body shop for further investigation.

77.     Thereafter, she was told that the body shop advised that the paint was chipping rather than bubbling, even though she clarified that the paint had bubbled and popped in at least one spot. Plaintiff McKenzie was never given a formal report of the investigation from the body shop.  The dealership did not otherwise, offer to take any action to repair the defect.

78.     Plaintiff McKenzie handwashes her car regularly and takes it through a carwash only once every three months.

79.     Plaintiff McKenzie's car has never been in an accident or had any other damages to the car that would have caused the paint to bubble and chip on her car.

80.     Had Plaintiff McKenzie known of the Defect, she would not have purchased the car, or would have paid less for it.

## TOLLING OF STATUTES OF LIMITATIONS

81.     Any applicable statute(s) of limitations have been tolled by Defendant's knowing and active concealment of the fact that the paint used on the Class Vehicles suffered from an inherent defect.  Plaintiffs and the members of the Class could not have reasonably discovered the true, latent nature of the paint defect until after they experienced the paint peeling and learned that the problem was not isolated to their vehicle.

82.     In addition, Kia kept Plaintiffs and class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiffs and class members.  Even when Plaintiffs and class members contacted Defendant and/or their authorized dealers for vehicle repairs concerning the paint defect, they were routinely told by Defendant directly and/or through its dealers that the paint on the Class Vehicles was not defective.

83.     Kia was and is under a continuing duty to disclose to Plaintiffs and the Members of the Class the true character, quality and nature of the paint used on Class

CLASS ACTION COMPLAINT

Vehicles.  At all relevant times, and continuing to this day, Kia knowingly, affirmatively, and actively concealed the true character, quality, and nature of the paint used on the Class Vehicles.  The details of Kia's efforts to conceal its above-described unlawful conduct are in its possession, control, and custody, to the exclusion of Plaintiffs and class members, and await discovery.  When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursing their claims.  As a result of the active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLASS ACTION ALLEGATIONS

84.    Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23. This Action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

85.    The Nationwide Class that Plaintiffs seek to represent is defined as follows:

**Nationwide Class:**

86.    All consumers in the United States who are current owners of model year 2017 vehicles through the present model year manufactured in the United States and all prior owners who paid to repair the paint.

87. In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure 23, Plaintiffs assert claims for and on behalf of separate Statewide Sub-Classes for California, Indiana, Texas, and Wisconsin, defined as follows:

**California Statewide Sub-Class:**

All consumers residing in California who are current owners of model year 2017 vehicles through the present model year manufactured in the United States and all prior California owners who paid to repair the paint.

-29-

**Indiana Statewide Sub-Class:**

All consumers residing in Indiana who are current owners of model year 2017 vehicles through the present model year manufactured in the United States and all prior Indiana owners who paid to repair the paint.

**Texas Statewide Sub-Class:**

All consumers residing in Texas who are current owners of model year 2017 vehicles through the present model year manufactured in the United States and all prior Texas owners who paid to repair the paint.

**Wisconsin Statewide Sub-Class:**

All consumers residing in Wisconsin who are current owners of model year 2017 vehicles through the present model year manufactured in the United States and all prior Wisconsin owners who paid to repair the paint.

88.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Nationwide Class and the Statewide Sub-Classes may be expanded or narrowed by amendment.

89.    Specifically excluded from the Nationwide Class and the Statewide Sub-Classes are Defendant, their officers, directors, agents, and employees, and any Judge assigned to this action, any member of the Judge's staff, and any member of the Judge's immediate family.

90.    <u>Numerosity</u>.  Although the exact number and identity of Members of the Nationwide Class and the Statewide Sub-Classes are uncertain and can only be ascertained through appropriate discovery, the number is great enough that joinder would be impracticable.  Plaintiffs are informed and believe that between 2016, when it would have begun selling its model year 2017 vehicles, and 2021, Kia has averaged sales of

CLASS ACTION COMPLAINT

more than 620,000 vehicles annually in the United States.[15]    Thus, Plaintiffs believe the proposed Nationwide Class and the Statewide Sub-Classes include thousands, if not hundreds of thousands, of members.

91.    The Nationwide Class and the Statewide Sub-Classes are readily identifiable from information and records in the possession, custody and control of Defendant, including VIN and/or specification sheets, as well as from records maintained by the various states' Departments of Motor Vehicles.

92.    <u>Commonality and Predominance</u>.  There are numerous questions of fact and law common to Plaintiffs and members of the Nationwide Class and the Statewide Sub-Classes that predominate over individual questions affecting any individual members, including but not limited to:

a.    whether the paint on the Class Vehicles has a propensity to chip and peel;

b.    whether Kia was aware of the defect in the paint and, if yes, how long Kia has known of the defect;

c.    whether the defective nature of the paint constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Class Vehicle;

d.    whether Kia had a duty to disclose the defective nature of the paint on Class Vehicles to Plaintiffs, class members and Members of the Sub-Classes;

e.    whether Kia failed to disclose and concealed the existence of the propensity to peel of the paint on Class Vehicles from potential customers;

f.    whether Kia has breached its express warranty obligations;

g.    whether Kia has violated state consumer protection laws;

h.    whether Plaintiffs and members of the Nationwide Class and the Statewide Sub-Classes are entitled to recover damages and, if so, the appropriate amount of those damages.

---

[15] Sales figures obtained from Kia Media, available at
https://www.kiamedia.com/us/en/sales (last visited June 13, 2022).

-31-

CLASS ACTION COMPLAINT

93.     Any defenses raised by Defendant, to the extent that any such defenses apply, are applicable generally to Plaintiffs, the entire Nationwide Class and the Statewide Sub-Classes, and are not distinguishable as to individual class members.

94.     <u>Typicality</u>.  The claims of the Plaintiffs herein are typical of the claims of the members of the Nationwide Class and the Statewide Sub-Classes as a whole, all of whom have sustained and/or will sustain damages, including irreparable harm, as a proximate or legal result of the common course of conduct of Defendant as complained of in this class action complaint.  The claims of Plaintiffs are typical of the Nationwide Class and the Statewide Sub-Classes because Defendant subjected all Nationwide Class and the Statewide Sub-class members to the same course of conduct.  Plaintiffs and members of the proposed classes all purchased Class Vehicles with paint that has a propensity to peel, giving rise to substantially the same claims.  As illustrated by complaints of class members, some of which have been excerpted above, each vehicle model included in the proposed class definitions has suffered from the same paint defect that Plaintiffs are complaining about.

95.     <u>Adequacy</u>.  Plaintiffs will fairly and adequately protect the interests of all members of the Nationwide Class and the Statewide Sub-Classes because their interests do not conflict with the interest of the members of the classes they seek to represent.  Plaintiffs have retained attorneys who are competent and who are committed to vigorously prosecuting this action on behalf of the proposed Nationwide Class and the Statewide Sub-Classes and have the financial resources to do so.

96.     <u>Superiority</u>.  Plaintiffs, Nationwide Class and the Statewide Sub-class members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit.

97.     Individual litigation of the claims of all Nationwide Class and the Statewide Sub-class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Nationwide Class and the Statewide Sub-Classes

CLASS ACTION COMPLAINT

are likely in the millions of dollars, the individual damages incurred by each Member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits. Even if every Nationwide Class and the Statewide Sub-class member could afford individual litigation, the court system would be overwhelmed by the burden and expense of managing many actions arising from the defective paint. Additionally, individualized litigation would present the potential for varying, inconsistent, or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, a class action in this matter will avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of the Nationwide class members and the Statewide Sub-class members, all by way of the comprehensive and efficient supervision of the litigation by a single court.

98. Further, without class certification, the prosecution of separate actions by individual Nationwide Class and the Statewide Sub-class members would create a risk of inconsistent or varying adjudications with respect to individual members of the proposed Nationwide Class and the Statewide Sub-Classes that would establish incompatible standards of conduct for Defendant. Kia has acted or refused to act on grounds generally applicable to the Nationwide Class and the Statewide Sub-Classes and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Nationwide Class and the Statewide Sub-Classes as a whole is appropriate.

99. Notice of a certified class action and of any result or resolution of the litigation can be provided to Nationwide Class and the Statewide Sub-class members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

100. There are no issues that render this litigation unmanageable.

\\\

\\\

-33-

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIRST CLAIM FOR RELIEF**
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class, or in the Alternative,**
**the California, Indiana, Texas, and Wisconsin Sub-Classes)**

101.    Plaintiffs restate and reallege Paragraphs 1 through 100 as though fully set forth herein.

102.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or alternatively on behalf of the California, Indiana, Texas, and Wisconsin Sub-Classes, against Kia America, Inc.

103.    Kia is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

104.    With respect to leases, Kia is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

105.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

106.    Kia warranted that the paint used on Class Vehicles was free from defect, and that the paint was proper and of workman like quality.

107.    Plaintiffs At the time of sale, Kia knew, should have known, or was reckless in not knowing, of their misrepresentation concerning inability of the paint on the Class Vehicles to perform as warranted, but nonetheless failed to rectify the situation or disclose the defect.

108.    Kia breached these express warranties in that the paint used on Class Vehicles does not conform to the promises or affirmations of fact made by Kia to consumers, including Plaintiffs and Members of the Nationwide Class and the Statewide Sub-Classes.

109.    Further, Kia breached these warranties by making these misrepresentations, failing to disclose the known defect in the paint and/or allowing these misrepresentations and omissions to be made with the intent of inducing consumers, including Plaintiffs and Members of the Nationwide Class and the Statewide Sub-Classes, to purchase Class

-34-

Vehicles.

110.    Plaintiffs experienced the Defect and notified Kia of the breach within a reasonable time.  Kia knew of the defect and yet chose to conceal it and to fail to comply with their warranty obligations.

111.    Kia's attempt to disclaim or limit the express warranty is unconscionable and unenforceable under the circumstances here because it knowingly sold Class Vehicles without informing consumers about the Defect while knowing that the paint would likely exhibit the defect before the end of the warranty period yet Kia would refuse to correct the Defect or blame the consumer.

112.    The time limits contained in Kia's warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Class, especially since Kia knew of the Defect.  Among other things, Plaintiffs and class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Kia.  A gross disparity in bargaining power existed between Kia and the class members, and Kia knew or should have known that the paint on the Class Vehicles was defective at the time of sale and would fail well before the industry standard.

113.    Kia did not adequately disclose the limitation of the paint warranty to three years/36,000 miles on Class Vehicles compared with the prominently displayed and much-touted 10-year length of the new vehicle warranty.  Moreover, when it set this strict limitation on the paint warranty, Kia knew or should have known that the paint on Class Vehicles had a propensity to fail either before the limited warranty period ran, or soon thereafter , but before industry standard and before the reasonable expectation of a consumer who would reasonably expect the paint to last through the ten-year new vehicle warranty.

114.    Plaintiffs and the class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

115.    As a result of Kia's breach of the express warranty, Plaintiffs and the

CLASS ACTION COMPLAINT

members of the Classes are entitled to legal and equitable relief against Kia, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

## SECOND CLAIM FOR RELIEF
### Breach of Implied Covenant of Good Faith and Fair Dealing
(On Behalf of the Nationwide Class, or in the Alternative,
the California, Indiana, Texas, and Wisconsin Sub-Classes)

116.    Plaintiffs restate and reallege Paragraphs 1 through 100 as though fully set forth herein.

117.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or alternatively on behalf of the California, Indiana, Texas, and Wisconsin Sub-Classes, against Kia America, Inc.

118.    Plaintiffs and each Class member's contract included an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

119.    Defendant breached the covenant of good faith and fair dealing through malicious conduct including, but not limited to, knowingly selling Class Vehicles that contained the Defect, failing to notify Plaintiffs and Class members of the Defect in the Class Vehicles, denying that the Class Vehicles had a Defect and blaming the problems with the paint on the customers, and failing to fully and properly repair the Defect.

120.    Defendant acted in bad faith and with a malicious motive to deny Plaintiffs and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

\\\
\\\
\\\
\\\
\\\

CLASS ACTION COMPLAINT

**THIRD CLAIM FOR RELIEF**
**Violation of the California Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750 *et seq*.**
**(On behalf of the California Sub-Class)**

121.    Plaintiffs restate and reallege Paragraphs 1 through 100 as though fully set forth herein.

122.    Plaintiff Carr brings this claim on behalf of herself and the California Sub-Class against Kia America, Inc.

123.    Defendant is a "person" within the meaning of California Civil Code § 1761(c).

124.    Plaintiff Carr and the California Sub-Class are "consumers" as defined by California Civil Code § 1761(d).

125.    The Class Vehicles that Defendant manufactured, marketed and sold, along with the servicing of those vehicles and the warranties associated therewith, constitute "goods" and "services" as defined by California Civil Code § 1761(a) and (b).

126.    The purchases or leases of the Class Vehicles by Plaintiff Carr and the California Sub-Class constitute "transactions" as defined by California Civil Code § 1761(e).

127.    Plaintiff Carr and the California Sub-Class purchased the Class Vehicles for personal, family and household purposes as contemplated under California Civil Code § 1761(d).

128.    Venue is proper under California Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in this District.

129.    Defendant failed to disclose the Defect.  Defendant also failed to disclose that the warranty was a sham, that Defendant would refuse to repair the paint exhibiting the Defect within the warranty period, and that it would blame the consumer when that was false.

130.    Defendant's deceptive practices were specifically designed to induce Plaintiffs and class members to purchase the Product.

-37-

CLASS ACTION COMPLAINT

131.  To this day, Defendant continues to engage in unlawful practices in

132.  Defendant deceived consumers, including Plaintiff Carr and the California Sub-Class, in that Kia knew of the Defect, and had exclusive knowledge of the Defect, but failed to disclose, or actively concealed, the Defect, and would fail to correct the problem, even when the Class Vehicle was still under warranty.

133.  Defendant's active concealment, and failures to disclose violated the Consumer Legal Remedies Act in the following manner:

    a.  Kia misrepresented that the paint on Class Vehicles was of a particular standard, quality and/or grade when it was not (Cal. Civ. Code §1770(a)(7));

    b.  Kia advertised the Class Vehicles with an intent not to sell them as advertised, (Cal. Civ. Code § 1770(a)(9));

    c.  Kia represented that a sales transaction for a Class Vehicle conferred or involved rights, remedies, or obligations which it does not (Cal. Civ. Code § 1770(a)(14));

    d.  Kia misrepresented that the Class Vehicles were sold and supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)); and

    e.  Kia inserted an unconscionable provision in its consumer agreements by including a limitation on the warranty for the paint on the Class Vehicles without including a statement regarding the paint defect and the unusually early failure of the paint job (Cal. Civ. Code § 1770(a)(19)).

134.  Kia's omissions regarding Class Vehicles' paint were material to Plaintiff Carr and Members of the California Sub-Class because a reasonable person would have considered them important in making purchase decisions and because Kia had a duty to disclose the truth.

135.  Plaintiff Carr and members of the California Sub-Class reasonably relied upon Kia's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, the Class Vehicles had they known the

CLASS ACTION COMPLAINT

truth.  Furthermore, Kia charges for repairs of paint peeling and resulting rust and corrosion without disclosing that the problem is widespread and that that repainting only a portion of the vehicle will not address the root cause of the peeling paint and thus, not prevent re-peeling or peeling on the remaining areas of the vehicle.

136.   As a direct and proximate result of Kia's material misrepresentations and nondisclosures in violation of the California Civil Code, Plaintiff Carr and members of the California Sub-Class have been injured.

137.   To this day, Defendant continues to engage in unlawful practices in violation of the CLRA. Defendant continues to conceal the defective nature of the paint on the Class Vehicles and has omitted to disclose, on inquiry from Plaintiff and class members, the Defect.

138.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), on June 13, 2022, Plaintiff Carr sent a notice letter to Kia to provide them with the opportunity to correct their business practices.

139.   Pursuant to Cal. Civ. Code §1780, Plaintiff Carr, on behalf of herself and members of the California Sub-Class, seek an order from this Court enjoining Kia from continuing the methods, acts and practices set forth above and a declaration that Kia's conduct violates the Consumers Legal Remedies Act.  If Kia does not correct the problem within 30 days, Plaintiff Carr will amend to seek actual and punitive damages and attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**Violations of Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL")**
**(On Behalf of the Nationwide Class, or in the Alternative,**
**the California Sub-Class)**

140.   Plaintiffs restate and reallege Paragraphs 1 through 100 as though fully set forth herein.

141.   Plaintiff assert this claim on behalf of the Nationwide Class and the California subclass.

-39-

CLASS ACTION COMPLAINT

142.   Plaintiff Carr bring this claim on behalf of herself and the California Sub-Class against Kia America, Inc.

143.   Defendant Kia is a "business" as defined by § 17200.

144.   The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

145.   The conduct of Defendant alleged above constitutes unlawful, unfair or fraudulent business practices in violation of the Unfair Competition Law, California Business and Professions Code §17200 *et. Seq.* ("UCL").

146.   Kia's conduct is unlawful, in violation of the UCL, because it violates the Consumers Legal Remedies Act, Cal. Civ. Code § 1760 *et seq.,* and the implied duty of good faith and fair dealing as alleged in this Complaint.

147.   Kia's conduct is unfair in contravention of the UCL because it acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner with respect to Plaintiffs and the Class members.  Kia engaged in unfair business practices and acts in at least the following respects:

a.   Kia sold vehicles to class members even though the paint used on those vehicles was defective, Kia knew that the paint was defective, and failed to disclose its knowledge of the paint defect at the point of sale or otherwise.

b.   Kia promoted and sold the Class Vehicle it knew contain a Defect that would likely result in the paint prematurely chipping, cracking, flaking and/or bubbling so that the Class Vehicles would not be sufficiently protected resulting in premature rusting of the body;

c.   Kia engaged in unfair trade practices when it advertised, marketed, and sold vehicles with paint that it knew did not conform to industry standards, was not of merchantable quality or workman like condition, and did not perform in accordance with the reasonable expectations of consumers.

d.   Kia further warranted the paint for only three years, with the knowledge that

-40-

CLASS ACTION COMPLAINT

the Defect would likely manifest before the warranty period ended, that Kia would refuse to honor the warranty, and would blame the peeling, bubbling, chipping and/or flaking paint on the customer;

e. Even though Kia had knowledge of the Defect, Kia personnel deny that the defect exists, instead insisting that the peeling paint is simply "normal wear and tear," to delay customers from submitting warranty claims and, when they do submit warranty claims, Kia denies them.

f. Kia knew of the existence of the Defect but failed to disclose it to consumers and instead continued to sell the Class Vehicles which have the Defect.

148.    The gravity of harm resulting from Kia's unfair conduct outweighs any potential utility.  The practice of selling Class Vehicles with the Defect, failing to disclose the Defect, and denying the Defect exists, blaming the customer so that any remedy is delayed until after the warranty period has expired, and continuing to sell vehicles with the Defect, harms the public at large and is part of a common and unform course of wrongful conduct.

149.    The harm from Kia's conduct was not reasonably avoidable by consumers. The Class Vehicles suffer from a latent defect at the point of sale, and even after receiving a large volume of consumer complaints, Kia did not disclose the Defect. Plaintiffs did not know of, and had no reasonable means of discovering, that the Class Vehicles are defective.

150.    There were reasonably available alternatives that would have furthered Kia's business interests of satisfying and retaining its customers while maintaining profitability, such as: (1) acknowledge the Defect and providing a permanent fix for the Defect; (2) adequately disclosing the Defect to prospective purchasers; (3) honoring the warranty; and (4) extending the warranty for the Defect.

151.    As a direct and proximate cause of Kia's business practices, Plaintiff Carr and the California Sub-Class suffered injury in fact and lost money or property, because they purchased vehicles they otherwise would not have, or in the alternative, would have

CLASS ACTION COMPLAINT

paid less for, and/or had or will have out of pocket repair costs related to the defective paint.

152.    Absent Kia's unlawful and unfair conduct, Plaintiff and Class members, who were all unaware of the Defect at the time of purchase, would not have purchased their Class Vehicles, or would not have purchased their Class Vehicles at the prices they did.

153.    Through its unlawful and unfair conduct, Kia acquired Plaintiff's money directly and as passed on by Kia's authorized dealers.  Plaintiff and Class members suffered injury in fact, including lost money or property, as a result of Kia's unlawful and unfair conduct.

154.    Plaintiff and Class members accordingly seek appropriate relief, including restitution under the UCL, and such orders or judgments as may be necessary to enjoin Kia from continuing its unfair, unlawful, and fraudulent practice.

155.    Kia's unfair business practices, as described herein, present a continuing threat to Plaintiff Carr and the California Sub-Class, and the general public, in that Kia continues to misrepresent the quality and workmanship of the paint used on Class Vehicles and continues to fail to disclose to consumers the defective nature of the paint. Plaintiff Carr and the California Sub-Class are entitled to equitable relief, including an order directing Kia to disclose the existence of the paint defect to owners and consumers and to provide restitution and disgorgement of all profits paid to Kia as a result of its unfair, deceptive, and fraudulent practices, and a permanent injunction enjoining such practices.

**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF INDIANA'S DECEPTIVE CONSUMER SALES ACT**
**Ind. Code §§ 24-5-0.5-1, *et seq.***
**(On behalf of the Indiana Sub-Class)**

156.    Plaintiffs restate and reallege Paragraphs 1 through 100 as though fully set forth herein.

157.    Indiana's Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-3(a) ("IDCSA") prohibits suppliers from engaging in deceptive, unfair, and abusive acts or

CLASS ACTION COMPLAINT

omissions in consumer transactions.

158.   Kia is a "supplier" who engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of "consumer transactions," in violation of the IDCSA.  As a regular part of its business, Kia sells motor vehicles in Indiana to customers, like Plaintiffs John and Stacy Knight.

159.   In connection with its consumer transactions, Kia engaged in unfair, abusive or deceptive acts, omissions or practices as follows:

a.  Kia sold vehicles to class members even though the paint used on those vehicles was defective, Kia knew that the paint was defective, and failed to disclose its knowledge of the paint defect at the point of sale or otherwise.

b.  Kia promoted and sold the Class Vehicle it knew contain a Defect that would likely result in the paint prematurely chipping, cracking, flaking and/or bubbling so that the Class Vehicles would not be sufficiently protected resulting in premature rusting of the body;

c.  Kia engaged in unfair trade practices when it advertised, marketed, and sold vehicles with paint that it knew did not conform to industry standards, was not of merchantable quality or workman like condition, and did not perform in accordance with the reasonable expectations of consumers.

d.  Kia further warranted the paint for only three years, with the knowledge that the Defect would likely manifest before the warranty period ended, that Kia would refuse to honor the warranty, and would blame the peeling, bubbling, chipping and/or flaking paint on the customer;

e.  Even though Kia had knowledge of the Defect, Kia personnel deny that the defect exists, instead insisting that the peeling paint is simply "normal wear and tear," to delay customers from submitting warranty claims and, when they do submit warranty claims, Kia denies them.

f.  Kia knew of the existence of the Defect but failed to disclose it to consumers and instead continued to sell the Class Vehicles which have the Defect.

CLASS ACTION COMPLAINT

160.   Kia engaged in unfair and deceptive trade practices when it advertised, marketed and sold vehicles with paint that did not conform to industry standards, was not of merchantable quality or workman like condition, and did not perform in accordance with the reasonable expectations of consumers.

161.   Kia's conduct as described above was likely to, and did in fact, deceive consumers, including Plaintiffs John and Stacy Knight and the Indiana Sub-Class.

162.   Kia had a duty to disclose the paint defect to consumers, including Plaintiffs and class members, because, as the manufacturer, it had exclusive knowledge about the paint, but actively concealed the defect by failing to disclose its knowledge of the paint defect at the point of sale or otherwise.

163.   The above unfair and deceptive practices and acts by Kia were done a part of a scheme, artifice, or device with intent to defraud or mislead and constitute incurable deceptive acts under the IDCSA.

164.   As a direct and proximate result of Kia's conduct, Plaintiffs John and Stacy Knight and the Indiana Sub-Class have been irreparably harmed.

165.   Plaintiffs John and Stacy Knight and the Indiana Sub-Class seek relief under Ind. Code § 24-5-0.5-4, including, but not limited to damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

166.   Plaintiffs John and Stacy Knight and the Indiana Sub-Class were injured by Defendant's unfair and deceptive trade practices also seek treble damages pursuant to Ind. Code §24-5-0.5-4(i).

## SIXTH CLAIM FOR RELIEF
### Texas Deceptive Trade Practices - Consumer Protection Act
### Tex. Bus. & Com. Code §§ 17.41, *et seq.*
### (On behalf of the Texas Sub-Class)

167.   Plaintiffs restate and reallege Paragraphs 1 through 100 as though fully set forth herein.

168.   Plaintiffs Ashley Jarman and Jvanne Rhodes bring this claim on behalf of themselves and the Texas Sub-Class against Kia America, Inc. under the Texas

-44-

CLASS ACTION COMPLAINT

Deceptive Trade Practices - Consumer Protection Act (the "Texas DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq*.

169.    The members of the Texas Sub-Class are individuals with assets of less than $25 million. Tex. Bus. & Com. Code § 17.45.

170.    The Texas DTPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." §§ 17.45(5), 17.50(a)(3).

171.    By failing to disclose the defect, Kia violated the DTPA, specifically the following subsections of Tex. Bus. & Com. Code § 17.46:

    a.  (b)(5) representing that goods or services have sponsorship, approval, characteristics, which they do not have;

    b.  (b)(7) representing that goods or services are of a particular standard, quality, or grade, if they are of another;

    c.  (b)(9) advertising goods or services with intent not to sell them as advertised;

    d.  (b)(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

    e.  (b)(20) representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve; and

    f.  (b)(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

-45-

CLASS ACTION COMPLAINT

172.   Defendant knew or should have known that its conduct violated the Texas DTPA.

173.   As a direct and proximate result of Defendant's unlawful and deceptive marketing and billing practices, Plaintiffs Jarman and Rhodes and the Texas Sub-Class have suffered injury and monetary damages.

174.   On June 13, 2022, Plaintiffs Jarman and Rhodes sent Defendant a letter complying with Tex. Bus. & Com. Code § 17.505(a). Plaintiffs Jarman and Rhodes presently do not claim relief for damages under the Texas DTPA until and unless Defendant fails to remedy its unlawful conduct towards the Texas Sub-Class within the requisite time period, after which Plaintiffs Jarman and Rhodes will seek all damages and relief to which they and the Texas Sub-Class are entitled.

175.   Upon filing this Complaint and as required by Tex. Bus. & Com. Code § 17.501, Plaintiffs will provide the consumer protection division of the Attorney General's office a copy of this Complaint.

## SEVENTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of the Nationwide Class, or in the Alternative, the California, Indiana, Texas, and Wisconsin Sub-Classes)**

176.   Plaintiffs restate and reallege Paragraphs 1 through 100 as though fully set forth herein.

177.   As alleged above, Kia sold vehicles to Plaintiffs and class members even though the paint used contained a defect and failed to disclose the nature of the defect at the point of sale.

178.   As a result of the fraudulent acts and omissions related to the paint defect, Kia obtained monies rightfully belonging to Plaintiffs and the Nationwide Class members, or alternatively the California, Indiana, Texas and Wisconsin Sub-Class members, to the detriment of Plaintiffs and the class members.

179.   Kia appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and class members, who, without knowledge of the defect, paid a higher

-46-

CLASS ACTION COMPLAINT

price for their vehicles than the vehicles were worth. Kia also received monies for vehicles that Plaintiffs and class members would not have otherwise purchased.

180.   It would be inequitable and unjust for Kia to retain these wrongfully obtained profits.

181.   The retention by Kia of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

182.   Plaintiffs and the Sub-class members are entitled under the laws of their respective states to restitution of the profits unjustly obtained by Kia, plus interest.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief as follows:

(a)    Certifying the proposed Nationwide Class and Statewide Sub-Classes, appointing Plaintiffs as class representatives, and appointing Plaintiffs' counsel as class counsel;

(b)    Permanently enjoining Defendant from engaging in improper conduct and practices as alleged;

(c)    Awarding Plaintiffs and members of the Nationwide Class and Statewide Sub-Classes restitution, including, without limitation, disgorgement of all profits and unjust enrichment that Defendant obtained as a result of their unlawful, unfair, and fraudulent business practices and conduct;

(d)    Awarding Plaintiffs and members of the Nationwide Class and Statewide Sub-Classes, where permitted by law, actual damages and statutory penalties;

(e)    Awarding Plaintiffs and members of the Nationwide Class and Statewide Sub-Classes for Defendants' knowing, willful, and intentional conduct;

(f)    Awarding pre-judgment and post-judgment interest;

CLASS ACTION COMPLAINT

(g)    Awarding attorneys' fees, expenses, and the costs of this action; and

(h)    Such other and further relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs demands a trial by jury on all issues so triable.

DATED:  June 14, 2022              By:        /s/ Michael F. Ram
                                              Michael F. Ram

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Michael F. Ram (SBN 104805)
Marie N. Appel (SBN 187483)
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
mram@forthepeople.com
mappel@forthepeople.com

**SIRI & GLIMSTAD LLP**
Mason Barney (Pro Hac Vice To Be Filed)
200 Park Avenue, 17th Floor
New York, NY 10166
Telephone (212) 532-1091
mbarney@sirillp.com

Attorneys for Plaintiffs and the Class

-48-

CLASS ACTION COMPLAINT